UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

|  |  |
|---|---|
| PHILLIP JOHNSON, | No. CV 10-04815-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

considered the medical evidence as contained in the examining opinion of Homayoun Saeid, M.D.; and

2. Whether the ALJ properly considered Plaintiff's testimony.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN EVALUATING THE OPINION**

**OF EXAMINING PHYSICIAN DR. SAEID**

On March 7, 2008, at the request of the Department of Social Services, Plaintiff received a complete internal medicine evaluation from Dr. Saeid. (AR 322-336.) In addition to performing a complete physical examination and taking a history, Dr. Saeid completed a "check-off" form provided by the Social Security Administration entitled "Medical Sourced Statement of Ability to Do Work Related Activities (Physical)." In that form, Dr. Saeid checked off "yes" in answer to the question, "Does the individual require the use of a cane to ambulate?" (AR 331.) Nevertheless, in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ did not restrict Plaintiff to ambulation with the use of an assistive device, such as a cane. (AR 23.) Plaintiff claims this is error. (JS at 6.)

The Court's review of all of the medical evidence in the AR reveals that no physician ever opined that Plaintiff required the use of an assistive device to ambulate. The only exception is in the check-off form completed by Dr. Saeid. Looking further, the Court notes that in Dr. Saeid's report (AR 322-326), there is no mention of

2

the need for such a device. Indeed, the physical findings do not support such a conclusion. Dr. Saeid found that Plaintiff had a normal gait, good motor tone with good active motion, strength is 5/5 in all extremities; normal reflex reaction in the biceps and knee jerks, and that Plaintiff is able to stand on his heels and toes and perform gait. Indeed, Dr. Saeid assessed that Plaintiff is capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, and can stand and walk six hours in an eight-hour day, and sit for six hours in an eight-hour day. (AR 326.)

The question arises, then, whether Dr. Saeid's checking of "yes" in answer to the question as to whether Plaintiff requires a cane to ambulate, is a typographical or inadvertent error. The evidence overwhelmingly supports an affirmative answer to that question. First, as noted, Dr. Saeid's written report nowhere mentions that Plaintiff requires an assistive device to ambulate, and in fact, Dr. Saeid reported completely normal findings regarding Plaintiff's ability to ambulate. Further, Plaintiff never complained to Dr. Saeid that he had any problem walking, and there is no indication that he utilized a cane or other device during the examination. Further, the check-off form itself requires further answers if the first answer is yes. Dr. Saeid provided no further answers to such questions as, how far can the individual ambulate without the use of cane, is the use of a cane medically necessary, and, without a cane, can the individual use his or her free hand to carry small objects. In addition, the form provides a space for the examiner to notate the particular medical of clinical findings and symptoms which support the assessment, and why the findings support the assessment. Again, this was left blank. (See AR at 331.)

3

The Court also notes that Dr. Saeid made another error in the check-off form, which would support an inference that he paid little attention to it, and that the reference to the need for use of a cane is an inadvertent error. That is, when assessing Plaintiff's ability to lift and carry, he checked off "occasionally" next to the section which contains limitations to 21 to 50 pounds. This is consistent with his diagnostic report; however, the next section indicates that Plaintiff is only capable of frequently carrying 11 to 20 pounds. (AR 330.) This is inconsistent with Dr. Saeid's diagnostic report, in which he indicates that Plaintiff can lift and carry 25 pounds frequently.

In addition to the inconsistencies between the check-off form and Dr. Saeid's own examination, no such medical assessment was made in another examination by a different physician, Dr. Klein, who performed a comprehensive internal medicine evaluation on April 26, 2006, at the request of the Department of Social Services. (AR 154-159.) In this report, Dr. Klein made detailed observations about Plaintiff's gait, which are worth repeating:

> "[Plaintiff] is able to change position and get on and off examining table without difficulty. Gait is normal; it is not unsteady or unpredictable. Heel to toe walking unaffected. Squatting and rising within normal limits. <u>No assistive aid is required for ambulation across the room.</u>"
> (Emphasis added.)

(AR at 158.)

Dr. Klein's conclusions are consistent with his examination, in which he found normal range of motion in Plaintiff's lower

extremities. (AR 157-158.)

Despite Plaintiff's complaints about the ALJ's failure to incorporate Dr. Saeid's purported finding that he required use of a cane, the fact is that the ALJ adopted the more restrictive functional conclusions reported by Dr. Klein two years earlier in assessing Plaintiff's RFC.

Finally, at the hearing before the ALJ in this matter (AR 466-486), Plaintiff was directly asked to describe his medical problems insofar as they prevented him from working. He indicated that he could go shopping from time to time, that he could walk up and down the aisles and pick out the items he needed, and put them in a basket, and then take them to the counter and pay for them. (AR 478.) Nowhere in this testimony, or anywhere else in the record, is there any indication whatsoever that Plaintiff had problems ambulating, much less that he required the use of an assistive device. Thus, the Court can find no error whatsoever with regard to the ALJ's assessment of Dr. Saeid's opinion. Indeed, Plaintiff's first issue borders on being frivolous.

**II**

**THE ALJ'S CREDIBILITY ASSESSMENT IS SUPPORTED**

**BY SPECIFIC AND LEGITIMATE REASONS IN THE RECORD**

In his second issue, Plaintiff asserts that the ALJ failed to articulate "legally sufficient reasons" to reject his testimony as to subjective pain. Plaintiff cites the well recognized two-step analysis (see Social Security Ruling ["SSR"] 96-7p), by which it must be determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to

produce the complained of pain or other symptoms, and if so, it is the Commissioner's responsibility to investigate and evaluate the intensity, persistence and limiting effects of these symptoms to determine the extent to which they limit the individual's ability to do work activities. (See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc).) Plaintiff asserts that the ALJ failed to conduct this analysis properly, and in fact, claims that the ALJ's decision is "void of any sufficient rationale at all ..." (JS at 16.) Plaintiff's claims are not borne out by the record.

The ALJ is charged with utilizing ordinary techniques of credibility evaluation. The regulations spell out many of the factors which should be evaluated in this process. (See 20 C.F.R. §§404.1529, 416.929; SSR 96-7p.)

Plaintiff's complaints were of poor endurance, a disabling fatigue, cramping in his whole body, back pain, and arthralgias (joint pains). (AR 23, 80, 99, 107.)

As to Plaintiff's complaints of poor endurance, the ALJ quite properly remarked that Plaintiff's "chronic alcoholism and daily marijuana use could reasonably be expected to reduce one's stamina." (AR 24.) This observation is well-supported by the record. Plaintiff's statements at various times about his use of alcohol and marijuana are inconsistent. For example, he reported to Dr. Klein on April 26, 2006 that he continues to drink approximately two beers per day. (AR 154.) At about the same time, he admitted that he drank heavily for 20 years, and although he stopped using cocaine, he smoked marijuana daily. (AR 175.) In a previous progress note from the year 2005, Plaintiff admitted that he is still drinking. (AR 178.) His treating doctor observed in 2004 that Plaintiff most likely had

continued drug and alcohol abuse. (AR 188.)  The ALJ also noted that Plaintiff had been advised to stop consuming alcohol, as it contributes to a condition called thrombocytopenia, which could be a factor in causing his fatigue. (AR 24.)  Further, the ALJ observed (and Plaintiff has not disputed the accuracy of these observations), that Plaintiff "maintained various dates of sobriety, none consistent." (Id.)

As a second reason, although Plaintiff complained of back pain, the ALJ observed that Plaintiff has never been diagnosed with or treated for any such condition. (AR 24.)  Again, Plaintiff does not dispute the accuracy of this observation, or the fact that it is relevant in the credibility analysis.  Indeed, as the Court has observed in discussing Plaintiff's first claim, both Doctors Saeid and Klein found normal results with regard to Plaintiff's spinal range of motion, negative straight leg raising tests, full power in all his extremities, and normal sensation and reflexes.

The same observation is true as to Plaintiff's complaint of arthralgias.  The ALJ noted that Plaintiff's physical examinations revealed that he had normal joints and no restrictions on range of motion in his hands, wrists, elbows, shoulders, hips, knees and ankles.  There was no evidence that he had any tenderness, swelling, erythema, or edema. (AR 24, 156-158, 324-326.)

Finally, the ALJ observed that Plaintiff made inconsistent statements about his own level of daily activities.  In contrast to his subjective pain complaints, he admitted he could lift and carry up to 25 or 30 pounds, that he shopped once a week, did household chores, could drive for up to an hour at a time, and that he did other household chores which would conflict with his subjective complaints.

(AR 24, 97-98.)  While Plaintiff correctly observes that he need not be a "quadriplegic dependant upon others for survival and unable to perform any activities" in order to demonstrate credible subjective pain (JS at 13), that is not the nature of the analysis which the ALJ performed in this case, which quite properly restricted itself to recognized credibility factors.

In sum, the Court finds no error whatsoever in the ALJ's credibility analysis.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED**.


DATED: June 2, 2011                    /s/
                                 VICTOR B. KENTON
                                 UNITED STATES MAGISTRATE JUDGE